# EXHIBIT "A"

## SETTLEMENT AGREEMENT

This Settlement Agreement (hereinafter referred to as "Agreement"), is entered into by and between Nigel Anglin, on behalf of himself, his heirs, executors, administrators, legal representatives and assigns (hereinafter referred to collectively as "Anglin") and Vitel Communications, LLC, and their respective present, past, and future affiliates, predecessors, heirs, successors, parents, subsidiaries, assigns, insurers, and each and every one of their respective owners, shareholders, servants, officers, directors, employees, agents, principals, relatives, representatives, beneficiaries, alter egos, and attorneys (hereinafter referred to as "Vitel"). Throughout this Agreement, Anglin and Vitel shall collectively be referred to as the "Parties." This Agreement shall not in any way be construed as an admission by Vitel of any violation of any law or any other liability including common law liability to Anglin.

WHEREAS, Anglin was employed by Vitel; and

WHEREAS, Anglin has alleged unlawful employment practices in violation of Federal and Florida law against Vitel, allegations which Vitel vehemently denies;

NOW WHEREFORE, in consideration of the promises and mutual covenants herein contained, the sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. Vitel agrees to pay the total amount of **THIRTY TWO THOUSAND DOLLARS ($32,000.00)**, inclusive of attorneys' fees and costs, allocated as follows:

   A. A payroll check in the amount of $11,000.00 made payable to NIGEL ANGLIN for the purpose of settling and compromising Anglin's claim for unpaid wages. This amount shall be treated as wages with the applicable taxes and legal deductions made;

3217438

B.   A check in the amount of $11,000.00 made payable to NIGEL ANGLIN for the purpose of settling and compromising Anglin's claim for liquidated damages and all other damages claimed by him. No deductions shall be made from this check and a Form 1099 shall be issued; and

C.   A check in the amount of $10,000.00, made payable to his attorneys, Morgan & Morgan, P.A. for the purpose of settling and compromising Anglin's claim for attorney's fees and costs.

Except as set forth above, Anglin shall be responsible for any taxes and/or tax liability associated with these payments.

The settlement payments described above will be due in Plaintiff's counsel's office (c/o Ryan Morgan, Esq., 20 N. Orange Avenue, Suite 1400, Orlando, FL 32801). They shall be made in two installments as follows: (i) the amounts set forth in Paragraphs 1(A) shall be paid no later than 10 days of the date this Agreement is fully executed; (ii) $5,500 of the amounts set forth in Paragraph 1(B) shall be paid no later than ten days from the date this Agreement is fully executed; (iii) $5,000 of the amounts set forth in Paragraph 1(C) shall be paid no later than ten days from the date this Agreement is fully executed; and (iv) the balance due under Paragraphs 1(B) and 1(C), $10,500, shall be paid no later than 45 days after the initial payments.

2.   In exchange for the settlement payments described above, Anglin, on behalf of himself and his partners, agents, representatives, executors, administrators, assigns, descendants, dependents, and heirs releases and discharges Vitel, and its employees, principals, agents, administrators, predecessors, successors, assigns, representatives, parents, subsidiaries, affiliates and attorneys, from all claims, demands, obligations, damages, controversies, suits, liabilities, actions or causes of action of any kind, whether known or unknown, and whether based on

2

3217438

contract, tort, statute, or other legal or equitable theory of recovery that were raised, or could have been raised, against Vitel, including without limitation, any claim under the Fair Labor Standards Act, 29 U.S.C. § 201, et al.

3. By entering into this Agreement, no Party admits any liability, fault or wrongdoing.

4. Anglin agrees not to apply for, solicit, seek or otherwise attempt to obtain or accept employment with, or to provide services in any manner to, Vitel. Anglin further agrees that Vitel shall not be under any obligation to employ or contract with him and that, should any application be made by him, Vitel shall not have any obligation to process that application or to hire him and that the failure to process the application or to hire him shall not constitute a violation of any local, state or federal law. If any prospective employer contacts Vitel regarding Anglin, Vitel will give a neutral reference indicating only Anglin dates of employment, pay rate and position.

5. Each party shall be responsible for payment of their own attorneys' fees and costs, except as provided in Paragraph 1.

6. The parties agree to maintain in confidence and not to disclose the terms of this Agreement, except as mandated by law. It shall not be considered a breach of the obligation of confidentiality for Anglin to make disclosure of this Agreement to his immediate family (who shall first be expressly advised of and bound by the same requirement of confidentiality), or to make disclosure of this Agreement or the underlying events in order to obtain private and confidential legal, tax, or financial advice, or to respond to any inquiry from any governmental entity or agency regarding a tax filing. The parties represent that no unauthorized disclosures concerning the terms of this Agreement were made prior to signing the Agreement. Any breach

3

3217438

by Anglin of the obligations set forth in this section shall be considered a material breach of this Agreement. Anglin acknowledges and agrees that, in the event of such a breach or threatened breach by him, Vitel, in addition to any other rights and remedies it may have, shall be entitled to appropriate injunctive relief, and shall further be entitled to recover its reasonable costs and attorneys' fees incurred in seeking relief for any such breach or threatened breach.

7. Anglin agrees that he has been given a reasonable period of time of at least 21 calendar days within which to review and consider this Agreement prior to signing it, but Anglin may waive this 21 calendar day period by signing the space provided at the end of this Agreement.

8. Anglin represents and warrants that he is authorized to enter into and that he has the authority to perform the terms of this Agreement. Anglin represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of all or any portion of his claims brought in this action.

9. If any provision of this Agreement or the application thereof to any party or circumstances shall be determined to be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provisions to any other party or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

10. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. Facsimile and electronic copies of the executed Agreement shall have the same force and effect as an original copy.

11. This Agreement is binding on each of the parties and their respective heirs, successors and assigns.

4

3217438

12. In the event any Party breaches this Agreement, the non-breaching Party shall be entitled to enforce all provisions of this Agreement in Court seeking all remedies available to it both in law and equity. The prevailing Party shall be entitled to recover its attorneys' fees and costs incurred in any proceeding to enforce this Agreement, including all fees and costs through all appeals.

13. This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia, without regard to its choice of laws or conflict of laws principles.

14. Except as expressly provided herein, the parties represent and warrant that in executing this Agreement, they do not rely upon and have not relied upon any oral or written representation, promise, warranty or understanding made by any of the parties or their representatives with regard to the subject matter, basis or effect of this Agreement.

15. The parties acknowledge that each party has participated in the drafting of this Agreement and each has had an equal opportunity to participate in the drafting of this Agreement. No ambiguity shall be construed against any party based upon a claim that the party drafted the ambiguous language.

16. The parties acknowledge and assume the risk that additional or different facts which they believe to exist may now exist or may be discovered after this Agreement has been entered into. The parties agree that any such additional, different or contrary facts shall in no way limit, waive, affect or alter this Agreement.

17. Anglin acknowledges that he has been advised to consult an attorney prior to signing this agreement. Anglin understands that whether or not he consults with an attorney is his decision. In this respect, Anglin has consulted with and been advised by C. Ryan Morgan,

5

Esquire in this matter and is satisfied that Mr. Morgan has provided him excellent legal advice and has explained to him all of his options in connection with this Agreement.

18. This Agreement, consisting of seven (7) pages, is freely and voluntarily entered into by the parties. The parties acknowledge that they have read this Agreement and that they understand the words, terms, conditions and legal significance of this Agreement. This Agreement may be executed in counter-parts and electronic and facsimile copies shall be treated as originals.

Date: 12 09 2015

_____
NIGEL ANGLIN

VITEL COMMUNICATIONS, LLC

Date: 12/7/2015

_____
Sign:

Eugene Caldwell
Print Name:

6

3217438